## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Lisa Lotto and Al Lotto, as        :
parents and next friends of their  :
minor daughter, Alyssa Lotto,      :
    Plaintiffs,              :        Civil No. 3:05cv727 (JBA)
                             :
v.                                 :
                             :
Hamden Board of Education,         :
    Defendant.               :

### RULING ON DEFENDANT'S MOTION TO DISMISS [DOC. # 22]

Plaintiffs Lisa and Al Lotto, on behalf of their minor daughter Alyssa Lotto, have brought a lawsuit against the Hamden Board of Education ("Board") alleging violation of the Equal Protection Clause of the Fourteenth Amendment, violation of Conn. Gen. Stat. § 10-233d(d), breach of a written contract, and intentional infliction of emotional distress.  See Amended Complaint [Doc. # 19].[1]  Defendant has moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all counts of the complaint, see [Doc. # 22], and oral argument on defendant's motion was held on November 4, 2005.  For the reasons that follow, defendant's motion will be granted.

## I.   FACTUAL BACKGROUND

The following facts are alleged in the amended complaint and will be presumed to be true for purposes of deciding the motion

---

[1]Plaintiffs have withdrawn their claim for violation of Article Eighth, § 1 of the Connecticut Constitution.  Pl. Brief in Opp. to Mot. to Dismiss [Doc. # 23] at 9.

1

to dismiss.  Alyssa Lotto, who was age 13 at the time of the events at issue, was an honor-roll student in the eighth grade at Hamden Middle School.  Am. Compl., Count One, ¶ 3.  "On November 9, 2004, Alyssa Lotto was accused of bringing alcohol into the school and was suspended" for ten days.  Id. at ¶ 4.  On November 16, 2004, Assistant Superintendent of Schools Edward J. Mackniak instituted expulsion proceedings, which ended on December 1, 2004 with a stipulated agreement between the plaintiffs and the Board of Education.  Id. at ¶¶ 5-6.  The stipulation provided that the plaintiffs would agree to Alyssa's expulsion for the remainder of the 2004-2005 school year and waive their right to an expulsion hearing.  Id. at ¶ 6.  In return, the Hamden Board of Education would provide "an alternative educational opportunity consisting of approximately two hours per day of academics and counseling" off site, and if Alyssa met certain conditions she would be permitted to return to school before the end of the school year.  Id. at ¶ 6; Count Three, ¶ 6; Count Four, ¶ 6.

Plaintiffs allege that Alyssa "was given little or no school work and was given excellent grades in subjects which she was not even taught during" the months she was expelled, and they allege that she was "issued such grades in an effort to conceal the fact that Alyssa was not being educated during that time...."  Id. at Count One, ¶ 8.

Alyssa returned to Hamden Middle School at the beginning of the third marking period in spring 2005.  Id. at Count Four, ¶ 7.

"On April 6, 2005, another student at Hamden Middle School was caught stealing property from Alyssa's pocketbook.  A criminal arrest and prosecution resulted.  However, the student was not expelled...." Id. at ¶ 8.  Also on April 6, 8 and 11, 2005, "two students at Hamden Middle School verbally threatened to assault Alyssa.  These threats were confirmed by school administrators. The students were not expelled although the defendant has in place written policies providing for expulsion in cases of verbal threats.  The Assistant Principal of the school informed the plaintiffs that Alyssa would 'have to get used to it.'" Id. at ¶ 9.

Additionally, plaintiffs allege that on "April 13, 2005, a small group of students started a fight in the Hamden Middle School cafeteria.  In the course thereof, certain identified students attempted to assault Alyssa....  During these events, one or more teachers also were assaulted....  None of the offending students has been expelled although the defendant has in place written policies mandating expulsion for assaults in the school.  Moreover, the assistant principal denounced and berated Alyssa after the incident, saying that she or one of her friends somehow must have been responsible for the riotous behavior of the other students." Id. at ¶ 10.  Plaintiffs allege that through these actions by school administrators, the Board "knowingly and intentionally encouraged... an atmosphere of chaos... thus exposing her to physical and verbal violence so

that the school became a place of fear."  <u>Id.</u> at ¶ 11.

## II.  STANDARD

In ruling on a motion to dismiss under Fed. R. Civ. P.
12(b)(6), the Court must accept all well-pleaded allegations as
true and draw all reasonable inferences in favor of the pleader.
<u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984), <u>Allen v.</u>
<u>Westpoint-Pepperell, Inc.</u>, 945 F.2d 40, 44 (2d Cir. 1991).  To
survive the motion, the plaintiff must set forth 'a short and
plain statement of the claim' that will give the defendant fair
notice of what the plaintiff's claim is and the grounds upon
which it rests."  <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957),
quoting Fed. R. Civ. P. 8(a)(2); <u>see also</u> <u>Swierkiewicz v. Sorema</u>
<u>N.A.</u>, 534 U.S. 506 (2002).  A "complaint should not be dismissed
for failure to state a claim unless it appears beyond doubt that
the plaintiff can prove no set of facts in support of his claim
which would entitle him to relief."  <u>Conley</u>, 355 U.S. at 45-46
(footnote omitted); <u>see also</u> <u>Jahgory v. NY State Dep't of Educ.</u>,
131 F.3d 326, 329 (2d Cir. 1997).  "The issue is not whether a
plaintiff will ultimately prevail but whether the claimant is
entitled to offer evidence to support the claims.  Indeed it may
appear on the face of the pleadings that a recovery is very
remote and unlikely but that is not the test."  <u>Scheuer v.</u>
<u>Rhodes</u>, 416 U.S. 232, 236 (1974).

4

## III. DISCUSSION

### A.    Expulsion Hearing Documents

As a preliminary matter, plaintiffs have objected to documents, including the written stipulation and other exhibits from the expulsion hearing, and that portion of the Hamden student handbook concerning expulsion, that defendant attached to its motion to dismiss.[2] See Def. Mot. to Dismiss [Doc. # 22], Ex. A.  Plaintiffs argue that it is improper to consider anything other than the allegations on the face of the complaint when deciding a Rule 12(b)(6) motion, and that if the Court considers any of the attached documents the motion must be converted into a summary judgment motion under Rule 56.

The Second Circuit case law on incorporation by reference of exhibits under Fed. R. Civ. P. 10(c) holds that where a document is central to a plaintiff's claims, but is not attached it to the complaint, the court may consider the document when deciding a

---

[2]The exhibits are: an expulsion hearing notice dated 11/16/04; a written witness statement from a teacher to the Hamden police department, dated 11/9/04; a written incident report from the assistant principal of Hamden Middle School, dated 11/9/04; an "Administrative Intervention Document" assigning Alyssa Lotto to 10 days out-of-school suspension on 11/10/04; a letter from the Assistant Principal to Mr. and Mrs. Lotto concerning the out-of-school suspension, dated 11/10/04; excerpts from the school handbook, including provisions governing expulsion and suspension of students, with a signature page from the Lottos dated September 2004; Alyssa Lotto's report card as of 11/9/04; an attendance record for Alyssa Lotto dated 11/10/04; a Connecticut State Department of Education Disciplinary Offense Record concerning Alyssa Lotto's suspension on 11/10/04; the minutes and decision of the Hamden Board of Education's Hearing Board regarding the expulsion hearing on 12/1/04; The Stipulation between the Lottos and the Board dated 12/1/04; various correspondence between the Lottos and the Board, the Superintendent, and the Assistant Superintendent in January and February 2005 regarding the adequacy of Alyssa's alternative education program and whether Alyssa could be readmitted to school early.

5

motion to dismiss under Rule 12(b)(6), but the court may not
consider outside documents that are not critical to the
plaintiff's case-in-chief.  For example, in I. Meyer Pincus &
Assocs. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991), a
plaintiff claiming securities fraud relied entirely on allegedly
false statements in a prospectus, but did not attach the
prospectus to the complaint.  The Second Circuit held that
because the "claims pleaded [in the complaint] are based only on
an alleged written misrepresentation appearing within the
prospectus...," the court would "decline to close [its] eyes to
the contents of the prospectus and to create a rule permitting a
plaintiff to evade a properly argued motion to dismiss simply
because plaintiff has chosen not to attach the prospectus to the
complaint or to incorporate it by reference."  Id.  Thus, "when
the plaintiff fails to introduce a pertinent document as part of
her pleading, a significant number of cases from throughout the
federal court system make it clear that the defendant may
introduce the document as an exhibit to a motion attacking the
sufficiency of the pleading; that certainly will be true if the
plaintiff has referred to the item in the complaint and it is
central to the affirmative case."  5 C. Wright & A. Miller,
Federal Practice and Procedure, § 1327.

On the other hand, the Second Circuit held in another
securities fraud case that it was error for the district court to
consider an annual report and disclosure form that were cited,

6

but not incorporated by reference, in the complaint, because the
fraud allegations in the complaint were based on public
statements other than the outside documents, which in fact
contradicted the plaintiff's fraud claims.  Cosmas v. Hassett,
886 F.2d 8, 13 (2d Cir. 1989); accord Goldman v. Belden, 754 F.2d
1059, 1066 (2d Cir. 1985) (Outside documents, including a
corporate annual report, "were to some extent quoted" in the
complaint, "but limited quotation does not constitute
incorporation by reference.  It was, therefore, improper for the
court to consider these documents unless it converted the motion
into one pursuant to Rule 56...").

In this case, the written stipulation entered into by the
Lottos and the Board is central to plaintiffs' case.  Violation
of this written agreement is the entire basis for the breach of
contract count, and it is also mentioned as part of the factual
underpinning for the Equal Protection count and the state
statutory count.  Furthermore, the Stipulation was signed by both
Al and Lisa Lotto, so there will be no surprise or unfairness to
plaintiffs in considering it on a Rule 12(b)(6) motion to
dismiss, nor is discovery necessary to shed light on its meaning.
Although plaintiff's counsel claimed at oral argument that the
Lottos signed the stipulation as a result of threats or duress,
no such allegations are made in the complaint, and the document
itself indicates that the Lottos were represented by counsel in
negotiating the agreement.

7

For these reasons, the Court will consider the written stipulation of December 1, 2004, but will not consider the other exhibits attached to the motion to dismiss, which are not integral to plaintiffs' complaint.

### B.   Equal Protection Claim

Under Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam), an individual may bring what is known as a "class of one" equal protection claim, alleging that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  A central question presented by this case is the pleading standard that must be met for such a claim to survive a motion to dismiss.

The Second Circuit recently held, in an appeal after jury trial, that to succeed on a class-of-one claim, "the level of similarity [proved] between plaintiffs and the persons with whom they compare themselves must be extremely high."  Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) (citing Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002) ("In order to succeed, the [plaintiffs] must demonstrate that they were treated differently than someone who is prima facie identical in all relevant respects.") (alteration in original)). Thus, the plaintiff's burden of proof is "to show that: (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would

8

justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." Neilson, 409 F.3d at 105.

On the other hand, in DeMuria v. Hawkes, 328 F.3d 704, 705-06 (2d Cir. 2003), the Second Circuit held that to survive a motion to dismiss under Rule 12(b)(6), plaintiffs alleging "class of one" equal protection claims were not required to "name any similarly-situated individuals or identify any differently-handled disputes" in the complaint. In that case, the plaintiffs alleged that they were involved in a property dispute with a neighbor, who engaged in a harassment campaign against them. The plaintiffs alleged that they repeatedly asked for police protection and for an arrest warrant against the neighbor, but the officer assigned to the case refused to act because he was friends with the perpetrator. Id. at 705. The plaintiff alleged that the officer "subjected the plaintiffs to a different standard of police protection than any other citizens of Clinton and he did so maliciously, arbitrarily, for the purpose of injuring them...." Id. The Second Circuit held that, while plaintiffs "face[d] a significant hurdle in finding evidence to prove their allegations of selective enforcement and unequal treatment[,] [s]uch concerns... should not defeat their claim at the pleading stage" because it was possible that plaintiffs could

find other citizens of their town who were situated similarly but treated differently.  Id. at 707.

This case falls somewhere between Neilsen and DeMuria because plaintiffs do in fact name the other students who allegedly were similarly situated to Alyssa Lotto but not expelled for violations of school rules.  Specifically, the Amended Complaint alleges that a student who stole from Alyssa's pocketbook and students who threatened Alyssa, started a fight and assaulted teachers in April 2005 were not expelled from Hamden Middle School.  At oral argument, plaintiffs stated that this list was not meant to be exhaustive, and that through discovery they believed they could obtain information concerning other similarly-situated students.  However, a fair reading of the Amended Complaint does not reveal any language suggesting that the comparators are listed merely for illustrative purposes, and the Court cannot accept plaintiffs' argument that the absence of such a limitation in the complaint necessarily leads to an inference that the plaintiffs intended the list to be illustrative only.[3]  Rather, the Court reads the complaint as alleging that Alyssa Lotto's Equal Protection rights were violated because she was treated differently from these particular students who were not disciplined for misbehavior.

---

[3]Plaintiffs had the opportunity to amend their complaint, and did so, after defendant stated its intention at the July 29, 2005 pre-filing conference to move to dismiss the complaint on the ground that the listed students were not sufficiently comparable, after Neilson was decided.

The difficult question is whether the Court may grant a Rule
12(b)(6) motion to dismiss on the basis that these allegations
are insufficient because the listed comparators are not
sufficiently similar as a matter of law.

In the end, however, the issue need not be decided because
the Court holds that even if plaintiffs were able to identify
students more similarly situated to Alyssa Lotto through
discovery, their complaint fails because they cannot prove as a
matter of law their allegations that the actions of the Hamden
Board of Education in expelling Alyssa were "arbitrary,
intentional and irrational," Am. Compl., Count Five, ¶ 12,
because they agreed to the expulsion.  Plaintiffs state that they
"agreed to accept [Alyssa's] expulsion," id., Count One, ¶ 6, and
the agreement is alleged to be in the form of a "written
contract."  Id., Count Three, ¶ 6.  In the contract, attached to
defendant's motion to dismiss, the Lottos waived their right to
an expulsion hearing and agreed to accept Alyssa's expulsion on
certain terms, including alternative education and counseling.
There is no allegation in the complaint that the Lottos were
coerced into agreeing to Alyssa's expulsion, and the contract
indicates that they were represented by counsel at the time they
signed it.  No discovery is necessary concerning the Stipulation,
because plaintiffs signed it and they are necessarily aware of
its terms and the fact that it formed the basis for the Board's
decision.

Alyssa Lotto's expulsion cannot, as a matter of law, be irrational or arbitrary because her parents voluntarily agreed to it.  Plaintiffs' factual allegations negate their claim that the Board's actions were irrational, arbitrary and malicious.  Therefore, plaintiffs' Equal Protection count fails and will be dismissed.

### C.    State Law Claims

The remaining counts of the complaint are brought under state law, and after dismissing the Equal Protection count, the Court declines to exercise supplemental jurisdiction over the other claims.  See 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim... if... the district court has dismissed all claims over which it has original jurisdiction...").

### IV.   CONCLUSION

Accordingly, defendant's motion to dismiss [Doc. # 22] is GRANTED and this case will be closed.

IT IS SO ORDERED.

/s/
_____
JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 29th day of November, 2005.**